**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CHERYL RIVERA,**<br><br>　　　　　　**Plaintiff,**<br><br>　　　v.<br><br>**JACK LEW,**<br>**Secretary of the United States Department of the Treasury,** *et al.***,**<br><br>　　　　　　**Defendants.** | **Civil Action No. 11-1305 (BJR)**<br><br>**MEMORANDUM OPINION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

　　　　Plaintiff Cheryl Rivera was married to Luis Rivera, a District of Columbia police officer, until their divorce in February 2009. Mr. Rivera died later that year, and Ms. Rivera sought survivor benefits from the District of Columbia Police and Firefighters Retirement Plan (hereinafter "Plan"). When the District of Columbia Retirement Board (hereinafter "DCRB") and the U.S. Treasury Department's Office of D.C. Pensions (hereinafter "ODCP") denied her request, Ms. Rivera filed the instant suit against DCRB; the Plan; the United States Secretary of the Treasury Jack Lew;[1] and Mr. Rivera's two surviving children, A.R. and G.L,[2] who currently receive Plan benefits. The parties have now filed cross-motions for summary judgment. Because DCRB and ODCP's denial of Ms. Rivera's benefits claim was consistent with relevant law, the Court will grant Defendants' motions and deny Plaintiff's.

---

[1]　Although this suit was originally brought against Timothy Geithner as the then-Secretary of the United States Department of the Treasury, Jack Lew, the current Secretary, is substituted as Defendant under Federal Rule of Civil Procedure 25(d)(1).

[2]　Lourdes Lopez, G.L.'s mother and legal guardian, is named as a Defendant in G.L.'s stead. A.R. is herself named as a Defendant, but, because her mother and legal guardian is the Plaintiff in this action, she is represented by guardians ad litem. *See generally* Order on Mot. for Joinder and Appointing Guardians Ad Litem (Dkt. #34).

**I.     BACKGROUND**

The facts underlying this case are undisputed. Cheryl and Luis Rivera were married in October 1992 and divorced in February 2009. *See* Pl.'s Statement of Material Facts Not in Dispute (Dkt. #44-4) (hereinafter "Pl.'s SOF") ¶¶ 1–2. Until his death in December 2009, Mr. Rivera served as a District of Columbia Police Officer and was an active participant in the D.C. Police and Firefighters Retirement Plan, which provides pension, survivor, and other benefits to its members and their beneficiaries. *See id.* ¶¶ 4–6; Treasury's Statement of Facts (Dkt. #49) (hereinafter "Treasury's SOF") ¶ 8; *see also generally* D.C. Code §§ 5-701 *et seq.* Pursuant to the Balanced Budget Act of 1997, as amended, D.C. Code §§ 1-801 *et seq.*, the Plan is funded by both the District of Columbia and the federal government. *See id.*; *see also* Treasury's SOF ¶¶ 1–2. Specifically, ODCP, an office of the U.S. Department of Treasury, is responsible for paying benefits for service rendered prior to June 30, 1997, and the DCRB, an independent D.C. agency, is responsible for benefits related to service rendered after that date. *See* D.C. Code §§ 1-801 *et seq.*

Given this "split of fiscal responsibility," 31 C.F.R. § 29.301, the Plan's administration is somewhat complex. Initial applications for Plan benefits are processed by DCRB, *see id.* § 29.404(a), and DCRB also provides for reconsideration of initial benefit determinations, *see id.* § 292.404(b)–(d). Applicants claiming federal benefits—*i.e.*, from service rendered prior to June 30, 1997—may then appeal DCRB's reconsideration decision to ODCP. *See id.* § 29.405; Treasury Order 102-23 (Aug. 13, 2004) (delegating Secretary's authority to ODCP).

Shortly after Mr. Rivera died, DCRB began paying Plan annuities to his two surviving children, A.R. (whose mother is the Plaintiff, Ms. Rivera) and G.L (whose mother is Lourdes Lopez). *See* Treasury's SOF ¶ 13. Because the Riveras were no longer married at the time of Mr.

Rivera's death, Ms. Rivera was not automatically eligible for similar benefits. Rather, the D.C. Spouse Equity Act of 1998, D.C. Code §§ 1-529.01 *et seq.*, provides that a former spouse like Ms. Rivera is only eligible for Plan survivor benefits if she submits a "qualifying court order" that "state[s] the former spouse's entitlement to [such benefits]." *See id.* § 1-529.02(c). In May 2010, Ms. Rivera contacted DCRB by telephone in order to claim benefits. In support, she submitted various documents related to her divorce, including a Property/Asset Settlement Agreement that addressed her entitlement to Mr. Rivera's pension. *Id.* ¶ 14; *see also* Administrative Record (hereinafter "A.R.") at 5, 35.

DCRB denied Ms. Rivera's claim, concluding that the Settlement Agreement did not was not a "qualifying court order" because it did not state her entitlement to a survivor annuity. *See* A.R. 33–34. Ms. Rivera requested reconsideration of DCRB's decision, asking DCRB to stipulate to the Brevard County (Florida) Circuit Court's entry of a *nunc pro tunc* domestic relations order that would retroactively amend the Settlement Agreement to state her entitlement to survivor benefits. *See id.* at 5–6, 42–43, 50; Treasury's SOF ¶¶ 17–18. DCRB acknowledged that a qualifying court order "may be issued after the death of a plan participant," but it declined to stipulate to the proposed order because it "include[d] a spousal survivor benefit that was not included in the parties' [original] Property/Asset Settlement Agreement." A.R. 50. Accordingly, it denied Ms. Rivera's request for reconsideration. *See id.*

Despite DCRB's refusal to stipulate to the proposed *nunc pro tunc* order and its denial of her claim, Ms. Rivera proceeded to petition the Brevard County Circuit Court for the entry of her proposed order. *See* Treasury's SOF ¶ 21; A.R. 56. In August 2010, the court entered the order, which purported to retroactively amend the Riveras' Settlement Agreement to "establish[ ] [Ms.

3

Rivera's] entitlement to receipt of the entire monthly regular survivor benefit." *Id.*; *see also id.* at 54–57.

In September 2010, Ms. Rivera submitted the court-approved *nunc pro tunc* order to DCRB, again requesting that DCRB approve her claim to Mr. Rivera's survivor benefits. *See id.* at 54. DCRB responded by letter a few weeks later, explaining that DCRB and ODCP would construe Ms. Rivera's submission to be a further appeal of DCRB's decision denying her claim. *See id.* at 12. The letter further explained that "[b]ecause DCRB and ODCP are [each] responsible for a portion of any benefit payable based on Mr. Rivera's service, and the rules governing the two agencies are not the same, each agency [would] independently consider [Ms. Rivera's] appeal." *Id.* DCRB also sent letters to Ms. Rivera in her capacity as A.R.'s guardian and to Ms. Lopez in her capacity as G.L.'s guardian, informing them that the children's survivor benefits would be reduced from approximately $2,600 per month to approximately $300 per month if Ms. Rivera won her appeal. *See* A.R. 65–88.

In January 2011, DCRB and Treasury jointly issued a decision denying Ms. Rivera appeal.[3] *See* A.R. 2–10. The decision reasoned that "[n]either the Plan nor the Spouse Equity Act expressly define[s] a posthumous *nunc pro tunc* [domestic relations order] as a qualifying court order." *Id.* at 6 (citing D.C. Code §§ 1-529.02(c), 1-529.03(b)–(c)). "Absent a qualifying order entered into prior to an active Plan participant's death," DCRB and ODCP went on to explain, a survivor's legal entitlement to Plan benefits "are fixed at the time of the participant's death by operation of law." *Id.* Accordingly, because the Settlement Agreement the Riveras entered prior to Mr. Rivera's death did not establish Ms. Rivera's entitlement to survivor benefits, DCRB and

---

[3]   The joint decision was issued in the form of a substantive letter from DCRB, *see* A.R. 2–8, and a separate letter from ODCP concurring in DCRB's analysis, *see id.* 9–10. Treasury's motion explains that "Treasury and DCRB jointly assessed . . . Plaintiff's claim, and Treasury allowed DCRB to take the lead in drafting the final decision, given DCRB's substantial expertise in administering the provisions of the Spouse Equity Act . . . ." Treasury's Mot. at 5 n.3.

4

ODCP concluded that she failed to "qualify as a former spouse for purposes of a survivor benefit." *Id.* at 7.

Ms. Rivera filed the instant appeal in July 2011,[4] initially naming Treasury, DCRB, and the Plan as Defendants. *See* Compl. (Dkt. #1) at 1. In light of the children's financial interest in the case, the Court subsequently granted unopposed motions to join A.R. and Ms. Lopez, G.L.'s guardian, as Defendants. *See* Minute Order (June 13, 2012) (joining Ms. Lopez); Order on Mot. for Joinder (Dkt. #34) (joining A.R. and appointing guardians ad litem). The parties have now filed cross-motions for summary judgment. On the one hand, Ms. Rivera's motion seeks to overturn DCRB and ODCP's denial of her benefits claim. *See generally* Pl.'s Mot. (Dkt. #44). She does not challenge DCRP and ODCP's determination that the original Settlement Agreement did not constitute a "qualifying court order," but rather argues only that the agencies erred by failing to recognize the *nunc pro tunc* order entered by Florida court. *See id.* at 1. Defendants, on the other hand, defend DCRB and ODCP's interpretation of the D.C. Spouse Equity Act as excluding posthumous *nunc pro tunc* orders. To that end, Treasury and the District Defendants (DCRB and the Plan) filed separate motions for summary judgment, *see generally* Treasury's Mot. (Dkt. #49); D.C. Defs.' Mot. (Dkt. #45); A.R.'s guardians *ad litem* filed a recommendation for summary judgment in Defendants' favor, *see generally* Guardians' Rec. (Dkt. #48); and Ms. Lopez filed a motion for summary judgment on G.L.'s behalf that incorporated the other Defendants' filings, *see* Lopez's Mot. at 1.

---

[4]   The Balanced Budget Act of 1997, as amended, D.C. Code § 1-815.02(a), vests "exclusive jurisdiction" over appeals from ODCP's Plan benefits determinations in the D.C. District Court. The D.C. Code also provides a cause of action for review of DCRB's benefits determinations. *See id.* §1-747(a)(1)(B).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides for entry of summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Since this case is an appeal from an agency decision, the Court's role at this juncture is limited to considering the administrative record and deciding whether the agency action conforms to relevant legal requirements. *See, e.g.*, *Kight v. United States*, 850 F. Supp. 2d 165, 169 (D.D.C. 2012); *Stuttering Found. of Am. v. Springer*, 498 F. Supp. 2d 203, 207 (D.D.C. 2007). The parties agree on this much. But because the decisions of two different agencies—ODCP, an office in the U.S. Department of Treasury, and DCRB, a D.C. agency—are at issue, the question of which framework controls the Court's review is more contentious. Specifically, the parties dispute whether this case is governed by the federal Administrative Procedure Act, 5 U.S.C. § 706; the D.C. Administrative Procedure Act, D.C. Code § 2-510; or the Balanced Budget Act of 1997, as amended, D.C. Code § 1-801 *et seq. See, e.g.*, Pl.'s Mot. at 3–4 (relying on the D.C. APA); Pl.'s Opp. at 1–2 (same); Treasury's Mot. at 2–5 (relying on the APA); Treasury's Op. at 4–5 (same); Treasury's Reply at 3 (relying on the Balanced Budget Act).

Fortunately, however, nothing in this case turns on the slight differences between the various proposed standards, all of which are deferential to the agencies' decision. The Balanced Budget Act of 1997, as amended, spells out the standard of review applicable to ODCP's Plan benefits decisions: "Any factual determination made by the [agency]," the statute provides, "shall be presumed correct unless rebutted by clear and convincing evidence." D.C. Code § 1-805.02(b). Moreover, "[t]he [agency's] interpretation and construction of the benefit provisions of the District Retirement Program and this chapter shall be entitled to great deference." *Id.* The

6

thrust of the APA is similar, permitting the Court to "set aside agency action" where such action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706.

With respect to the DCRB, the D.C. Code specifically authorizes the agency to make "reasonable interpretations of . . . all governing authorities." *Id.* § 1-711(e). And just like the federal APA, the D.C. APA directs the court to "set aside any action or findings and conclusions found to be . . . [a]rbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." D.C. Code § 2-510(a)(3).

### III.    ANALYSIS

The parties' cross-motions raise only one issue: did DCRB and ODCP err by determining that Ms. Rivera's *nunc pro tunc* order was not a "qualifying order" under the D.C. Spouse Equity Act?[5] Ms. Rivera argues that the text, legislative history, and purpose of the D.C. Spouse Equity Act; general equitable principles; and the parties' intent all support her position that the agencies were required to recognize the *nunc pro tunc* order and grant her survivor benefits. Defendants disagree, relying heavily on the plain language of the D.C. Spouse Equity Act.

In relevant part, the Act provides:

> (b) The Mayor shall comply with any qualifying court order that is issued prior to the employee's retirement. . . . .
>
> (c) The Mayor shall comply with any qualifying court order that is issued after the employee's retirement only to the extent it is consistent with any election previously executed at the time of retirement by the employee regarding that former spouse. . . . .

D.C. Code § 1-529.03. Ms. Rivera emphasizes that the statute makes no express exception for *nunc pro tunc* orders, instead requiring "compl[iance] with any qualifying court order," *id.* § 1-

---

[5] Although Defendants' motions respond to a few other arguments seemingly raised in Ms. Rivera's Complaint, *see e.g.*, Treasury's Mot. at 8–11, Ms. Rivera presses only one argument at this juncture: that her *nunc pro tunc* order was a "qualifying court order."

7

529.03(b). *See* Pl.'s Mot. at 4–5. "[E]xceptions not made," she argues, "cannot be read." *Id.* at 4 (emphasis omitted).

As Defendants point out, however, Ms. Rivera points to no court that has ever recognized a posthumous *nunc pro tunc* order as a "qualifying court order" for purposes of the D.C. Spouse Equity Act or the Plan. Moreover, her interpretation ignores all of the statute's qualifying language. The statute does not simply state that the agencies must "comply with any qualifying court order," but rather that they must "comply with any qualifying court order that is issued *prior to the employee's retirement*." D.C. Code § 1-529.03(b) (emphasis added). Orders "issued after the employee's retirement," the statute continues, require compliance "*only to the extent [they are] consistent with any election previously executed at the time of retirement.*" *Id.* § 1-529.03(c) (emphasis added). Accordingly, under any standard of review, DCRB and ODCP got the statute exactly right: the D.C. Spouse Equity Act does not include a flat prohibition of posthumous orders, but such orders require compliance "only to the extent [they are] consistent with any election previously executed," *id.* § 1-529.03(c). *See* A.R. 6–7, 50.

And here, as the agencies' correctly concluded, the only order issued prior to Mr. Rivera's retirement was the original Settlement Agreement, which, as Ms. Rivera does not dispute, fails to state her entitlement to survivor benefits. Furthermore, the *nunc pro tunc* order, which was issued after Mr. Rivera's death, is inconsistent with the original Settlement Agreement insomuch as it purports to assign survivor benefits to Ms. Rivera. Ms. Rivera's only response is to argue that "the issue of making an election under the Plan is moot" because Mr. Rivera had not retired at the time of the death. *See* Pl.'s Opp. at 4. But DCRB and ODCP's conclusion that the posthumous order was not "issued prior to the employee's retirement," D.C. Code § 1-529.03(b), is eminently reasonable.

Having lost the textual battle, Ms. Rivera falls back on legislative history, purpose, and equity arguments, none of which undermines DCRB and ODCP's decision to deny her benefits claim. First, pointing to legislative history demonstrating that the D.C. Spouse Equity Act was modeled after a similar federal statute, *see* Council of the District of Columbia, Report on Bill 7-389, D.C. Spouse Equity Amendment Act of 1988, at 1–5 (Oct. 27, 1998), as well as to Congress's subsequent amendment of that federal statute to expressly prohibit recognition of posthumous orders, *see* Civil Service Retirement Spouse Equity Act, as amended, 5 U.S.C. § 8341(h)(4), Ms. Rivera argues that the District Council's failure to enact a similar amendment demonstrates the Council's affirmative intent to permit the recognition of posthumous orders. *See* Pl.'s Mot. at 6–9. Defendants, however, draw the contrary inference from the relationship of the D.C. Spouse Equity Act to the federal statute, insisting that it makes sense to interpret the two statutes consistently. *See, e.g.*, District Defs.' Mot. at 14–15. Given the clarity of the statute's text, the Court need not draw either inference. Indeed, as the Supreme Court has explained, a legislative body's failure to act "lacks persuasive significance because several equally tenable inferences may be drawn from such inaction, including the inference that existing legislation already incorporated the offered change." *United States v. Craft*, 535 U.S. 274, 287 (2002) (quoting *Central Bank of Denver, N.A.*, 511 U.S. 164, 187 (1994)) (internal quotation mark omitted).

Second, Ms. Rivera contends that the primary purposes of the D.C. Spouse Equity Act— "increas[ing] the economic protection of former spouses[,] improv[ing] morale among District employees[,] and provid[ing] fiscal protection to the trust"—would be furthered by recognizing her *nunc pro tunc* order. Pl.'s Mot. at 9. But as Defendants explain, the purposes of the Act are better served by excluding posthumous *nunc pro tunc* orders. In particular, permitting a would-

9

be beneficiary to alter a Plan member's benefit elections after his death "undermines the member's right to select the recipient of his or her survivor benefits, opens the door for litigation among multiple parties claiming to be the rightful beneficiary, and creates confusion and uncertainty in plan administration." District Defs.' Mot. at 15–16.

Third and finally, Ms. Rivera turns to equity-based arguments. Emphasizing that "retirement issues in divorce" are complex, she maintains that *nunc pro tunc* orders are sometimes practically necessary to "right a wrong." Pl.'s Mot. at 10. In addition, although she acknowledges that "[u]nder the D.C. Code, intent of the parties is not a factor when determining the status of a qualifying order," Ms. Rivera nevertheless contends that parties' intent "may be considered as an equitable factor by this Court." *Id.* at 11. The Court is not unsympathetic to Ms. Rivera's situation, but this case turns on a legal question, not an equitable one. And even if it were proper for the Court to consider equitable factors, Ms. Rivera is not the only interested party. Indeed, the benefits Mr. Rivera's two children currently receive would be significantly reduced if the *nunc pro tunc* order entitled Ms. Rivera to benefits. *See* Guardians' Rec. at 1–2. As for the parties' intent, Ms. Rivera conceded that the D.C. Spouse Equity Act permits no such consideration. Rather, the statute expressly requires that a "qualifying court order" award survivor benefits "by its terms." D.C. Code § 1-529.02(c).

## IV. CONCLUSION

The Court finds that the DCRB and ODCP correctly interpreted the D.C. Spouse Equity Act to preclude recognition of posthumous *nunc pro tunc* orders. Accordingly, Plaintiff's motion for summary judgment is denied and Defendants' cross-motions for summary judgment are granted.

A separate Order consistent with this Memorandum Opinion will follow.

June 14, 2013

*[signature: Barbara J. Rothstein]*

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE